# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * *
TANYA LYNN CARTER, as parent      *
and legal representative of the estate  *    No. 15-1030
of her son, Z.J.C., deceased,      *    Special Master Christian J. Moran
                                   *
              Petitioner,          *    Filed: January 10, 2017
                                   *
v.                                 *    Attorneys' fees and costs; reasonable
                                   *    basis.
SECRETARY OF HEALTH               *
AND HUMAN SERVICES,               *
                                   *
              Respondent.          *
* * * * * * * * * * * * * * * * * * * *
```

Mark L. Krueger, Krueger & Hernandez, S.C., Baraboo, WI, for Petitioner;
Voris E. Johnson, United States Dep't of Justice, Washington, DC, for Respondent.

## PUBLISHED DECISION DENYING ATTORNEYS' FEES AND COSTS[1]

On September 20, 2016, the undersigned issued an order concluding proceedings in the above captioned matter. Petitioner Tanya Carter then filed an application for attorneys' fees and costs. For the reasons set forth below, the undersigned finds the petition was not supported by a reasonable basis and DENIES petitioner's request for attorneys' fees and costs.

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

# I.   Brief Factual and Procedural History

Z.J.C. was born on March 31, 2013.  Exhibit 1.  He was relatively healthy during his first 15 months.  He was seen at the emergency room by Muhammad Khan for an upper respiratory infection with fever on June 27, 2014.  Exhibit 2 at 35-36.  On July 1, 2014, Z.J.C. received the pneumococcal and diphtheria-tetanus-acellular pertussis ("DTaP") vaccines during his 15-month well-child visit with pediatrician David May.  During this visit, Dr. May diagnosed Z.J.C. with viral roseola but stated he was otherwise healthy.  Exhibit 3 at 3-5.

The following evening, on July 2, 2014, Z.J.C. was found unresponsive in his crib.  Emergency personnel transported Z.J.C. to the local emergency room where he received initial emergency treatment before being transferred to the University of Wisconsin American Family Children's Hospital.  Exhibit 2 at 40.  The admission note taken by Dr. Kathryn Gannon states that Z.J.C. was a healthy boy who was put down to bed and later found face down and not breathing by the mother's boyfriend.  Dr. Gannon noted the previous upper respiratory infection diagnosis but indicated that Z.J.C. had recovered and was "behaving like normal." Id. at 44.

After extensive examinations and tests were performed on Z.J.C., it was determined that the results were consistent with brain death and he was taken off of life-support on the evening of July 4, 2014.  The final discharge diagnosis included possible non-accidental trauma.  Exhibit 2 at 47-52.  An autopsy was performed the following day with the final opinion being that the cause of death was due to a severe respiratory tract infection.  Exhibit 5 at 3.  The death certificate lists the cause of death as anoxia as a consequence of acute bronchopneumonia.  Exhibit 9.

Just over a month after Z.J.C.'s death, on August 11, 2014, Ms. Carter contacted the counsel of record regarding her claim.  See Pet'r's Fee App., filed Oct. 27, 2016, tab 1 at 5.  For about a year, petitioner's counsel gathered medical records.  Id. at 5-8.  On September 16, 2015, the petition was filed alleging that the pneumococcal and DTaP vaccines Z.J.C. received on July 1, 2014, caused a severe bacterial respiratory infection and his ultimate death.  Shortly thereafter medical records and a statement that the records filed to date were substantially complete were filed.

On November 19, 2015, the Secretary filed her report pursuant to Vaccine Rule 4.  During the ensuing status conference, the "parties agreed that expert reports were a necessary next step for this case."  Order, filed Dec. 10, 2015.  Ms. Carter began her search for an expert at that time.  See Pet'r's Reply, filed Nov. 17, 2016, at 2 ("Respondent is correct in her assertion that Petitioner did not search for an expert to support her claim until after the Petition was filed").  Over the ensuing months, Ms. Carter filed several status reports detailing her efforts to locate an expert.  On September 6, 2016, Ms. Carter filed a Stipulation of Dismissal.  Ms. Carter had not located an expert to opine on the case and did not file an expert report.  On September 20, 2016, the undersigned issued an order concluding proceedings.

On October 27, 2016, Ms. Carter filed the pending motion for attorneys' fees and costs, requesting $21,014.36.  She argues that due diligence in the form of a medical record review, VAERS search, medical literature review, and assessment of similar cases before the Vaccine Program was performed prior to the filing of the petition.  She also supported the amount of fees requested.

The Secretary opposes the motion asserting that Ms. Carter did not satisfy the reasonable basis standard.  The Secretary argues that Ms. Carter has offered no evidence to support her claim that Z.J.C.'s untimely death was caused-in-fact by any vaccine.  Resp't's Resp., filed Nov. 4, 2016, at 17.  The Secretary cites the medical examiner's determination that the cause of death was acute bronchopneumonia, which predated the vaccination.  Id.  The Secretary further asserts that a review of the medical records should have made the need for Ms. Carter to consult an expert "apparent to petitioner's counsel."  Id.

Ms. Carter filed a reply essentially repeating the arguments she made with the filing of her motion.  Ms. Carter also disagrees with the Secretary's assertion that a medical expert should have been consulted prior to the filing of the petition.  Ms. Carter contends that an expert opinion was not needed before the petition was filed based on the information researched about the claim, and requiring an expert's opinion before the filing of a petition would be contrary to a goal of the Vaccine Program.  Pet'r's Reply at 2.

The matter is now ripe for adjudication.

## II.   **Standards for Adjudication**

Even when a petitioner in the Vaccine Program does not prevail on his or her claim and does not receive compensation, a special master may award reasonable attorneys' fees and other costs if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013).

"Good faith" is a subjective standard. Hamrick v. Sec'y of Health & Human Servs., No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007). A petitioner acts in "good faith" if he or she honestly believes that a vaccine injury occurred. Turner v. Sec'y of Health & Human Servs., No. 99-544V, 2007 WL 4410030, at * 5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). The Secretary does not contest that the petition was filed in good faith. Resp't's Resp. at 7. There is no evidence that this petition was brought in bad faith; therefore, the undersigned finds that the good faith requirement is present.

In contrast, the Secretary does contest the reasonable basis for this petition. The Federal Circuit has not interpreted "reasonable basis" or provided any guidance as to how petitioners satisfy the reasonable basis standard. Chuisano v. Sec'y of Health & Human Servs., 116 Fed. Cl. 276, 285 (2014) (citing Woods v. Sec'y of Health & Human Servs., 105 Fed. Cl. 148 (2012)). In the absence of guidance, special masters have taken different approaches. Silva v. Sec'y of Health & Human Servs., No. 10-101V, 2012 WL 2890452, at *8-9 (Fed. Cl. Spec. Mstr. June 22, 2012), mot. for rev. denied, 108 Fed. Cl. 401 (2012).

Recent decisions have examined whether any evidence supports "the claim for which the petition was brought." The statute's use of the phrase "reasonable basis for the claim for which the petition was brought" is consistent with other portions of the statute that require the petition to be filed with evidence. See Chuisano v. Sec'y of Health & Human Servs., No. 07-452V, 2013 WL 6234660, at *8-10 (Fed. Cl. Spec. Mstr. Oct. 25, 2013), mot. for rev. denied, 116 Fed. Cl. 276 (2014). Evidence that is relevant to determining whether there is reasonable basis for a claim may include medical records, affidavits from percipient witnesses, and opinions from retained experts. See 42 U.S.C. § 300aa–11(c).

"The burden is on the petitioner to affirmatively demonstrate a reasonable basis." McKellar v. Sec'y of Health & Human Servs., 101 Fed. Cl. 297, 305 (2011), decision on remand vacated, 2012 WL 1884703 (May 3, 2012).

## III.   Discussion

Ms. Carter's petition alleged that the pneumococcal and DTaP vaccines Z.J.C. received on July 1, 2014, caused Z.J.C.'s condition and eventual death. Pursuant to the explanation above, Ms. Carter becomes eligible for attorneys' fees and costs by presenting some evidence in the form of medical records or expert reports that supports this allegation.  Ms. Carter cited no evidence that the alleged vaccines caused Z.J.C.'s condition and his eventual death.  Ms. Carter did not cite to any medical record in which a treating physician linked the vaccines to Z.J.C.'s condition.  Ms. Carter also did not file a report from an independently retained expert who opined that the vaccines caused Z.J.C.'s condition and/or his death. The absence of evidence means that there is no basis (reasonable or otherwise) for the claim set forth in the petition.  Ms. Carter, therefore, does not satisfy the reasonable basis standard.

Ms. Carter's arguments in support of reasonable basis primarily focus on her attorney's diligence and not about the evidence supporting Ms. Carter's claim.  A review of the attorney's invoices reveals that all of the medical records, including the autopsy materials, were gathered in one year.  However, diligence requires more than the collection of medical records.  After obtaining the medical records, the attorney had ample time to review and to assess those records without concern of a looming statute of limitations deadline.  Such a review would have revealed the lack of evidence supporting the claim for which the petition was brought and highlighted the need for expert consultation.

Ms. Carter argues that "[p]etitioners are not required, nor should they be required, to hire an expert and have an expert report completed prior to the filing of a petition."  Pet'r's Reply at 2.  Ms. Carter cites no cases in support of this argument.  More importantly, the Vaccine Act is inconsistent with this argument. As extensively discussed in Chuisano, 2013 WL 6234660, at *8-10, in crafting the Vaccine Act, Congress expected petitioners to file front-loaded petitions with "supporting documentation, demonstrating" five elements.  42 U.S.C. § 300aa–11(c)(1).  Notably, one of these items, which is set forth in paragraph (C), concerns causation.  The petition should include "supporting documentation" showing that

the vaccinee "sustained . . . any injury . . . which was caused by a vaccine."  42 U.S.C. § 300aa–11(c)(1)(C)(ii)(I).  Ms. Carter's failure to obtain this "supporting documentation" regarding causation prior to filing the petition does not eliminate the reasonable basis requirement.

After Ms. Carter filed her petition, her attorney began to search for an expert.  Ms. Carter's attorney maintains that an unnamed expert was willing to support the claim but withdrew "based on some references in the medical records that were personally offensive."  Pet'r's Mot. at 3.  Attorneys' assertions are not evidence.  And allowing attorneys to justify their receipt of money with this type of allegation would create numerous problems.  See Chuisano, 2013 WL 6234660, at *23.

Finally, Ms. Carter's need for a supporting expert is particularly acute in this case.  She has not identified any treating doctor who suggested that the vaccines contributed to Z.J.C.'s death.  Moreover, the records from the treating doctors actually point to a cause other than the vaccines — a severe respiratory tract infection.  This information should have raised additional alarms that reasonable basis could be established only with a report from an expert.

For these reasons, Ms. Carter has not established "a reasonable basis for the claim for which the petition was brought."  This showing is a condition for an award of attorneys' fees and costs to a non-prevailing party.  Without this showing, Ms. Carter is not eligible for an award of attorneys' fees and costs.  Given this outcome, there is no reason to determine whether the requested amount of attorneys' fees and costs is reasonable.

## IV.    Conclusion

Ms. Carter's request for attorneys' fees and costs is DENIED.  In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[2]

---

[2] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.

**IT IS SO ORDERED**.

<u>S/ Christian J. Moran</u>
Christian J. Moran
Special Master